GARDNER *et al. v.* HEFLIN.

(Division B.   May 27, 1940.)

[196 So. 256.   No. 34180.]

**W. D. Womack**, of Belzoni, and **L. F. Easterling**, of Jackson, for appellants.

R. Leon Bass, of Belzoni, and John B. Gee, of Rolling Fork, for appellee.

**McGowen, J.,** delivered the opinion of the court.

Appellee, Heflin, sued appellants, Mrs. Sophia Gardner and D. S. Skaggs, for damages, and recovered a judgment against them for $800; and appellants prosecute an appeal here.

By the declaration, in substance, he alleged that he was lawfully in possession, as lessee, of 250 acres of land, by a written lease executed by the owner, Mrs. Sophia Gardner, to R. V. Goode, and by Mrs. Gardner and Goode, in writing, the lease was assigned to him. The lease was to be in effect for the years 1938 and 1939.

Heflin alleged that: In November, 1938, Mrs. Gardner and Skaggs wrongfully took possession of the dwelling house on said land by entering the dwelling house thereon and evicting him therefrom; they deprived him of the use and possession of said lands for the remainder of the year 1938 and the entire year of 1939; the eviction occurred while he was temporarily away from the place; a part of his furniture and household effects were left by him in the house while he was temporarily away from home; and that the furniture and household effects were greatly damaged. He further alleged that by the eviction and unlawful deprivation of the land, he lost and was damaged in the amount of a Government check which he would have received for the crop year 1939 amounting to $500.

Heflin's declaration was in three counts. By the first count, he sued for the unlawful eviction and deprivation

of the possession of the property. By the second count, he sued for the damage to his furniture and household effects. And, by the third count, he sued for the loss to him of a Government check amounting to $500 for the year 1939.

On behalf of the appellee, the evidence shows that: The lease and a written assignment of it were made to him for the years 1938 and 1939; he went into possession thereunder and made a crop of cotton of approximately fifty-two bales during that year; in the fall, he temporarily went to Louise, Mississippi, some distance from the farm and carried a part of his furniture, in order to assist his father in conducting the latter's mercantile business; he left a considerable portion of his furniture and household effects in the house, with the doors locked; he left a number of mules and his farming implements in the charge of one of his tenants; and that he made several visits on weekends and remained overnight in the house. During the interim, he returned to the house and found Skaggs occupying it with his family, and notified Skaggs that he had rented the place from the wrong person, that he, Heflin, was the man from whom to rent it; and he intended to return to the place in January and pursue his farming operations, and that he had $1,000 in cash, proceeds of a Government check which he had received, with which to conduct such operations for the year 1939.

Heflin admitted that while he was away a deed of trust in favor of a bank had been foreclosed and his livestock and farming implements had been sold by the trustee and removed from the place. He also admitted that he had not paid for the supplies furnished him during that year; and said that he had arranged to buy a tractor with which to farm the land instead of using livestock for that purpose. He did not make demand on Mrs. Gardner or Skaggs for the surrender of the place; denied that he had told anybody that he did not intend to farm the place during the year 1939; but said that he had undertaken to find another place for that year and failed. He

claimed that his furniture was scratched and damaged, and that his wife removed it from the dwelling about April, 1939. He was corroborated as to his intention to return, and as to the damage to the furniture, by his wife, although she said that they had only returned and spent one night during one weekend after they had gone to Louise.

The defense offered by the appellants was to the effect that Heflin had abandoned the place. Gardner, husband of Mrs. Sophia Gardner, and Skaggs testified that on or about a week or two before Christmas, 1938, the day Skaggs moved into the dwelling house, they found the house open and the household effects scattered throughout the house, and that the furniture and effects were gathered up and carefully placed in one of the rooms and the door locked. Gardner, who acted as Mrs. Gardner's agent with reference to this plantation, testified that during that fall Heflin had told him, after he had moved, that he did not know whether he would farm the land in 1939 or not. Several tenants of Heflin's testified that he told them to look out for themselves as he did not intend to farm the land. There was testimony that he left ten or fifteen bales of cotton unpicked in the fields. There was also testimony to show that he was financially unable to conduct the farming enterprise for the year 1939.

There was no evidence as to the eviction, or of what specific damages or elements of damage the appellee had suffered on account of the eviction. Heflin testified generally that he had been damaged $2,000, but declined to be specific as to any items or element thereof.

At the conclusion of the testimony, the court granted a peremptory instruction as to the counts on the damage to the furniture and loss on account of the Government check. The issue as to the unlawful eviction and deprivation of the lands was submitted to a jury which returned a verdict as above stated.

The only instruction given by the court below on the measure or amount of damage for either side is, as fol-

lows: "The Court instructs the jury for the plaintiff that if you find from a preponderance of the evidence in this case that at the time complained of and embraced in the contract herein introduced the plaintiff was in lawful possession of the land and main dwelling house in question, and that for any cause he was unlawfully e-victed, and prevented from regaining possession of the property, over the protest and against the wish of the plaintiff then it is your sworn duty to find for the plaintiff, and fix his damage in whatever amount you believe from the evidence he sustained."

The evidence offered by the appellants that the appellee had abandoned the farm and dwelling house was very strong, also that the conduct of the appellee tended to support the theory. There is no evidence that the appellants were animated by any spirit of oppression or wilful wrong. The evidence is convincing that they, in good faith, believed that appellee had left the premises without any intention of returning thereto. The only thing that entitled the appellee to submit the case to the jury was the fact that he had left a part of his household goods and furniture in the dwelling and that he claimed that he had securely locked it.

The instruction granted by the court, under these circumstances, was fatally erroneous. It left the door wide open for the jury to assess any damages that it saw fit. The jury was not limited to such damages as naturally flowed from an eviction and repossession of a dwelling in the manner indicated in the statement of facts. There is no theory upon which the instruction could be justified on the facts of this case. Of course, the jury should have been limited to such damages as proximately flowed from the eviction in the manner we have detailed.

In order to justify this instruction, appellee argues that he was entitled to punitive damages, and therefore the jury had a right to so find. The record shows that the appellee did not ask for an instruction as to punitive damages, nor was such granted by the court; and, on the

facts of this case, punitive damages are not permissible. We are bound to think that this instruction materially affected the jury in the amount fixed by it in this case and was harmful to the appellants; in view of the fact that the proof showed beyond question that Heflin had lost money in his farming operations during the year 1938, had permitted his livestock to be sold, and had left the place in such a manner as to lead a reasonable person to believe that he did not intend to return. The verdict was not justified. At least, the jury should have been limited to those damages which were proximately caused by the eviction.

Reversed and remanded.